Mark R. Thierman, Cal. Bar No. 72913
Joshua D. Buck, Cal. Bar No. 258325
Leah L. Jones, Cal. Bar No. 276448
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, CA  89511
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiff*

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

# UNITED STATES DISTRIC COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA B. BOSWELL; on behalf of himself, all others similarly situated, the general public, and as an "aggrieved employee" under the California Labor Code Private Attorneys General Act,<br><br>      Plaintiff,<br><br>      v.<br><br>BANK OF AMERICA CORPORATION, a Delaware Corporation doing business in California; BANK OF AMERICA, NATIONAL ASSOCIATION, a national association bank doing business in California;<br><br>      Defendants. | Case No.:<br><br>CLASS, REPRESENTATIVE, AND PRIVATE ATTORNEY GENERAL ACTION<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT FOR:**<br><br>1) Failure to Pay Wages for All Hours Worked in Violation of 29 U.S.C. § 201, et. seq;<br>2) Failure to Pay Overtime in Violation of 29 U.S.C. § 207;<br>3) Forfeiture of employee wages (LC Section 221 & 400 et seq.)<br>4) Wages Not Paid Within Proper Pay Period (Lab. Code 204)<br>5) Inaccurate Pay Stub (Lab. Code 226)<br>6) Failure to Pay Minimum Wage (Lab. Code 1194)<br>Unfair Competition (California B&P § 17200)<br>7) California Labor Code Private Attorneys General Act (California Labor Code § 2699) |

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com; www.thermanbuck.com

Comes now Plaintiff JOSHUA B. BOSWELL ("Plaintiff") on behalf of himself, all others similarly situated, the general public and all aggrieved employees and alleges:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction over all federal claims alleged herein pursuant to Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).   Plaintiff has signed a consent to sue form which is attached hereto as Exhibit 1.

2.     Plaintiff invokes the supplemental jurisdiction of this Court to consider claims arising under state law pursuant to 28 U.S.C. § 1367.

3.     This Court also has jurisdiction over all California state law claims herein pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), Defendant being a Delaware Corporation with its principal place of business in Charlotte, North Carolina, and the California class consisting of over 100 people with damages far in excess of $5 million aggregated, exclusive of interest and costs.

4.     Pursuant to 28 U.S.C. §1391, venue is proper in the Central District of California because the Defendant employed Plaintiff within the venue of this District and the claims arose out of that employment within this District.

## PARTIES

5.     Defendant BANK OF AMERICA (hereinafter Defendant Bank of America) is a Delaware corporation with its principal place of business in North Carolina and doing business as a bank, mortgage lender and financial institution nationwide and within the State of California.

6.     Plaintiff JOSHUA B. BOSWELL (hereinafter "Plaintiff") was employed from August 2015 until January 2017 as a Mortgage Loan Officers (also referred to herein as a "MLO") in its Beverly Hills, California branch.

## STATEMENT OF FACTS:

A.     **Duties Of A MLO**

7.     The primary duty of an MLO, is the origination of mortgages and other loan products. An MLO is expected to and does in fact spend the majority of his or her working time

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

originating mortgages and other loan sales is therefore primarily engaged in the   sale of financial products including mortgages.  A major source of Defendant's business gross revenue is from fees it earns from the re-sale of those loans on the secondary market, *e.g.*, to Freddie Mac, Sallie Mae, and other financial institutions.   MLOs were engaged in the initial "production" or the financial products or services that the employer is in the business of selling.

8.     Because the primary job duty of a MLO did not relate to their employer bank's management or general business operations, the administrative employee exemption to the FLSA's overtime requirements does not apply. *See*, *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 2017 WL 2855084 (9th Cir. July 5, 2017).

9.     Because MLO were not primarily engaged in duties that related to their employer bank's management or general business operations, the administrative employee exemption to overtime provisions of the Wage Orders of the Industrial Wage Commissions of the State of California does not apply either.

10.     As a matter of law, MLO do not qualify for the inside sales exemption under Section 7(i) of the FLSA because banks and other financial institutions lack a retail concept.

**B.     Basic Compensation Agreement**

11.     On or about Defendant's August 6, 2015, Defendant sent Plaintiff an "Official Offer Confirmation Letter" (a copy of which is attached hereto as Exhibit 2), which sets forth the terms and conditions of employment agreed upon by the parties.  Upon information and belief, the same or a substantially similar for "Official Offer Confirmation Letter" was sent and accepted by all MLO's employed by Defendant within the last four years from the filing of this complaint.

12.     Like all or almost all MLO's, Plaintiff worked from an office and routinely worked 60 hours a week or more.  Plaintiff and all MLO's were paid mostly on a "commission basis" without overtime premium pay pursuant to the terms of the "Bank of America Retail MLO Sales Incentive Plan".

13.     As stated in the "Addendum to Offer Letter-Compensation":

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

> Draw - As a MLO you will receive a draw each pay period. A draw is defined as a fixed and regularly recurring wage advance against future adjusted commissions and other performance-based compensation. The draw is reconciled against (netted from) future adjusted commissions and other compensation.  There are two types of draws: Non-recoverable and Recoverable. For both types of draws, calculated monthly earnings, if earned, that exceed the advances, are paid at the end of the month following the funding month (*in other words, incentive is paid net of all advances*). [Emphasis is original]

14.    In the initial months of employment, all MLO were provided with an unrecoverable draw against commission, but not a salary.  After that date, all MLO could receive a recoverable draw.  However, even a non-recovery draw was subtracted from future commissions earned.  As further stated in the "Addendum to Offer Letter-Compensation":

> *Non-recoverable Draw* - From your first day of work through January 2016, if the calculated monthly earnings pursuant to the Retail MLO Sales Incentive plan are less than the draw, the shortfall below the monthly draw will not be carried over to future months. As noted earlier, if the calculated monthly incentive is greater than the advance and offsets, then only the amount in excess will be paid at the end of the following month with all calculations pursuant to the Retail MLO Sales Incentive Plan. . . . *Recoverable Draw* - Beginning February 2016, if calculated monthly earnings do not exceed advances, a deficit is created which is carried forward, unless prohibited by applicable state law. All advances and deficits are fully recoverable each month before any commission or other compensation is earned. The cumulative deficit is recovered through future compensation before any additional compensation is paid (with the exception of the draw). As noted earlier, if the calculated monthly incentive is greater than the advance and offsets, then only the amount in excess will be paid at the end of the following month with all calculations pursuant to the Retail MLO Sales Incentive Plan.

**C.    Additional Compensation**

15.    In addition to the commissions and draws mentioned above, each MLO earns a commission override which is called a "Guarantee Plus." The Guarantee Plus is a fixed and determinable sum that is paid in addition to standard commission earnings on funded loans, based on the MLO's compensation agreement applicable to the time period in which the mortgage loan was funded or closed.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

16.     In addition to the commissions, draws and the "Guarantee Plus" mentioned above, each MLO earns an additional commission override called an Enhanced BPS.  The "Enhanced BPS" is an additional commission amount based upon commissions from Portfolio Refinance, Portfolio Plus Refinance, MSA, Bank Referred (non-Purchase), and Home Equity loans which are paid according to the Retail MLO Sales Incentive Plan.

17.     Although it cannot easily be calculated at the time earned, the Guarantee Plus amount is "earned" at the time the Mortgage Loan is funded and closes even though it is payable at the end of the following month.

18.     Likewise, although it cannot easily be calculated at the time earned, the Enhanced BPS amount is "earned" at the time the Mortgage Loan is funded and closes. *Nguyen v. Wells Fargo Bank*, 2016 WL 5390245, at *11 (N.D. Cal. Sept. 26, 2016) ("Nor is the Court persuaded by Wells Fargo's reliance on the second half of Section 5(C) to argue that commission payments are not earned until after the calculation and verification process is complete.")

19.     Once the Mortgage Loan is funded and closes escrow, there is nothing further the MLO must do in regards to that loan.   All the other "stipulated conditions" are completed at the time the loan is funded and closes.

20.     However, if the MLO terminates employment before actual payment of the Guarantee Plus amount and/or the Enhanced BPS amount, then the MLO forfeits the Guarantee Plus amount and the Enhanced BPS amount. As stated in the "Addendum to Offer Letter-Compensation":

> You must be employed on the date that any monies stated in this letter are paid excluding monthly commissions and draws which are paid according to the Home Loans and Insurance General Plan Provisions."

This forfeiture provisions applies to payments of monthly commissions, Guarantee Plus and Enhanced BPS.

19.     Once the Mortgage Loan is funded and closes escrow, there is nothing further the MLO must do in regards to that loan.   All the other "stipulated conditions" are completed at the time the loan is funded and closes.

20.    In addition, the Defendant has a pseudo bonus of several basis points which is based solely on the amount of loans originated during the prior "bonus period". This bonus is told to the employees before the bonus period to encourage sales efforts. After the calculation of bonus level (chairman's level, etc), after calculation of the bonus amount, and after the defendant announces that the bonus has been earned, the bonus amount is not paid but is forfeited if the employee leaves the employer's employ before the pseudo bonus is actually deposited into the employee's account.

21.    However, if the MLO terminates employment before actual payment of the Guarantee Plus amount and/or the Enhanced BPS amount, then the MLO forfeits the Guarantee Plus amount and the Enhanced BPS and the pseudo bonus amounts.

**D.    Failure to Pay Minimum Wage in California**

21.    Defendant paid its MLOs twice a month. The first two weeks the Defendant paid MLOs a "recoverable draw" of approximately two thousand dollars. The next two weeks, Defendant paid the MLOs their commissions (without overrides) earned in the prior month less any draws paid in prior pay period.

22.    But under California law, commissions can only cover wages due for the pay period for which they are paid. *Peabody v. Time Warner Cable, Inc.,* 59 Cal. 4th 662, 328 P.3d 1028 (2014) (holding that an employer may not attribute commission wages paid in one pay period to other pay periods.).

23.    A recoverable draw is a loan, and is not paid "free and clear". In those pay periods where the Defendant paid only draws, then the employees essentially were paid nothing, which is less than the minimum wage under California law.

**E.    Failure To Pay For Rest Periods In California**

24.    In addition, Defendant did not pay MLO separately for rest periods. In those weeks that Defendant paid MLO's commissions, they paid nothing extra for the break times. In the other weeks, they paid nothing at all for anything, since an advance is a loan and not a payment of wages free and clear. The facts in this case are nearly the same as recently considered by the California Court of Appeal in *Vaquero v. Stoneledge Furniture LLC*, 9 Cal.

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com; www.thermanbuck.com

App. 5th 98, 115–16, 214 Cal. Rptr. 3d 661, 674 (Ct. App. 2017), as modified (Mar. 20, 2017), review denied (June 21, 2017) which stated:

> For sales associates whose commissions did not exceed the minimum rate in a given week, the company clawed back (by deducting from future paychecks) wages advanced to compensate employees for hours worked, including rest periods. The advances or draws against future commissions were not compensation for rest periods because they were not compensation at all. At best they were interest-free loans. Stoneledge cites no authority for the proposition that a loan for time spent resting is compensation for a rest period. To the contrary, taking back money paid to the employee effectively reduces either rest period compensation or the contractual commission rate, both of which violate California law. (See § 221 [prohibiting employers from collecting or receiving from an employee "any part of wages theretofore paid by said employer"]; § 222 [prohibiting employers from withholding any part of a wage agreed upon]; § 223 [prohibiting employers from "secretly pay[ing] a lower wage while purporting to pay the wage designated by statute or by contract"]; cf. Armenta, supra, 135 Cal.App.4th at p. 323, 37 Cal.Rptr.3d 460 [averaging wages across pay periods to satisfy minimum wage requirements "effectively reduces [employees'] contractual hourly rate"].) [ ¶ ] Thus, when Stoneledge paid an employee only a commission, that commission did not account for rest periods. When Stoneledge compensated an employee on an hourly basis (including for rest periods), the company took back that compensation in later pay periods. In neither situation was the employee separately compensated for rest periods.

F.  **Additional Facts in Support of Willfulness and Lack of Good Faith Defense**

25.    Based upon prior litigation, including but not limited to, *Franklin v. Bank of America N.A.* Case 3:05-cv-00519-CRB (N.D. Cal. 2006), and *Whitaker v. Countrywide Fin. Corp.*, No CV 09589CASPJWX, 2011 WL 13187107 (CD Cal. Sept 19, 2011), Defendant knew or should have known, that it could not claim the administrative exemption unless it paid its Mortgage Loan Officers on a salary basis.  See also, *Kelly v. Bank of America*, 10-C-5332, 201 WL 4526674 (N.D. Ill. Aug. 30, 2011), *Cramer v. Bank of America*, NA, No 12-C-8681, 2013 WL 6507866 (N.D. Ill. Dec. 12, 2013).

26.    As of March 24, 2010, Defendant knew or should have known that its mortgage loan officers, who performed the duties described by the United States Department of Labor's

Wage and Hour Division (WHD), in Administrator's Interpretation No. 2010-1, had a primary duty of making sales for their employers and, therefore, did not qualify as *bona fide* administrative employees exempt under section 13(a)(1) of the Fair Labor Standards Act, 29 U.S.C. § 213(a)(1).

27.    Nevertheless, Defendant continues to this day to violate the FLSA by failing to pay its MLO premium pay for hours worked in excess of 40 per week.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

### A.    FLSA Collective Action Allegations

28.    Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

29.    The **FLSA Class** consists of the following persons:

> **All Mortgage Loan Officers employed by Defendant in the United States within three years immediately preceding the filing of this action until the date of judgement after trial.**

30.    With regard to the conditional certification mechanism under the FLSA, Plaintiff is similarly situated to those that he seeks to represent for the following reasons, among others:

a.    Like all other MLOs, Defendants employed Plaintiff on a commission basis, without a true salary of 455 a week "free and clear."

b.    Plaintiff, like all MLO's, is not administrative exempt from the overtime provisions of the FLSA because his primary duty, like all MLOs, was to "sell" financial products like Mortgage Loans.

c.    As a matter of law, the inside sales exemption under 7(i) of the Fair Labor Standards Act does not apply to Plaintiff or any other MLO because Defendants' business lacks a retail concept.

d.    Like all MLOs, Plaintiff regularly worked in excess of 40 hours a week without receiving overtime premium pay of one and one-half times their regular rate of pay. In every week, except when he was on vacation, Plaintiff worked over fifty hours, averaging a little over 61 hours per week during that time.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

e.     Plaintiff's situation is similar to those he seeks to represent because Defendant failed to pay Plaintiff and all other FLSA Class Members for all hours worked in excess of 40 a week at a rate equal to one and one half their regular rate of pay.

31.     Upon information and belief, Defendant employs, and has employed, in excess of 3,000 FLSA Class Members within the applicable statute of limitations.

32.     Plaintiff has signed a Consent to Sue form, which is attached to the Complaint as Exhibit 1.

33.     Plaintiff seeks preliminary and final certification and requests an order from this court that notice of this action be sent to all prospective FLSA CLASS Members so that they may become party plaintiffs in this litigation pursuant to 29 U.S.C. §216(b) if they so desire.

**B.     California Overtime / B&P Code 17200 Class Allegations**

34.     The **California Overtime / B&P Code 17200 Class** consists of the following persons:

> **All employees of Defendant, Bank of America, who at all**
> **relevant times were employees of Defendant, Bank of America,**
> **as Mortgage Loan Officers who were subject to Defendants'**
> **illegal practices of failing to pay overtime due at time and one**
> **half their regular rate under federal law for all hours worked**
> **in excess of 40 in a workweek.**

35.     The California Overtime / B&P Code 17200 Class consists of at least 100 employees, and likely more, and is so numerous that the joiner of each member of the class is impracticable.

36.     There is a well-defined community of interest in the questions of law and fact affecting the members of the California Overtime / B&P Code 17200 Class that Plaintiff seeks to represent.  The class members' claims against Defendants involve questions of common or general interest, such as does Defendant's failure to meet either or both the "salary test" and/or the duties test for an administrative exemption under the federal overtime statute, while failing

to be exempt as inside sales under federal law because financial institutions like Defendant lack a retail concept as a matter of law make the members of the California Overtime / B&P Code 17200 Class eligible for restitution of overtime wages owed under California Business & Professions Code Section 17200.

37.     Plaintiff will fairly and adequately represent the interests of the members of the California Overtime / B&P Code 17200 Class. Plaintiff is a member of the class, the claims of Plaintiff are typical of those in the class and there is no antagonism between the class and Plaintiff or his counsel.  Plaintiff's counsel is also experienced in these types of wage-hour actions.

38.     Plaintiff requests permission to amend the complaint to include additional class representatives if Plaintiff is deemed not to be an adequate representative of the class.

**C.     California Labor Code § 203 (Unlawful Forfeiture) Class Allegations**

39.     The **California Labor Code § 203 (Unlawful Forfeiture) Class** consists of the following persons:

> **All employees of Defendant Bank of America employed in the state of California, who at all relevant times were employees of Defendant Bank of America as Mortgage Loan Officers and were subject to Defendant Bank of America's illegal practices not paying Plaintiff and all others similarly situated commission wages earned solely because they were not employed by the Defendant at the scheduled time of payment.**

40.     This would include wages due from commissions and commission overrides after a reasonable time for calculation of the exact amount due.

41.     California Labor Code § 203(a) states in relevant part: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

42.   ""[W]ages'" are defined to include "all amounts for labor performed by employees ... whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." (Lab. Code, § 200, italics added.) Under this definition, sales commissions are considered "wages." (*See Reid v. Overland Machined Products*, 55 Cal.2d 203, 207–208, 10 Cal.Rptr. 819, 359 P.2d 251 (1961); *Koehl v. Verio, Inc,*. 142 Cal.App.4th 1313, 1329, 48 Cal.Rptr.3d 749 (2006); *Hudgins v. Neiman Marcus Group, Inc.,* 34 Cal.App.4th 1109, 1118, 41 Cal.Rptr.2d 46 (1995).

43.   Plaintiff concedes that the employer may set off commissions advanced but not earned from future payments, but the essence of an advance is that at the time of payment the employer cannot determine whether the commission will eventually be earned because a condition to the employee's right to the commission has yet to occur or its occurrence as yet is otherwise unascertainable.  In this case, there was nothing further for the MLO to do after the mortgage was funded and closed. And although the commission rate may have been affected by post-closing events like the level of commissions paid to others or the amount of commissions earned so far in the pay period, none of these subsequent events require the work or attention of the MLO.

44.   Plaintiff seeks only those commissions that were earned at the applicable rate and for which all conditions were met, except the requirement the employee be on payroll at the time the commission check issues.

45.   Defendant may not require an employee to agree to a wage deduction in the guise of recouping an advance based on conditions that are unrelated to the sale and/or that merely reflect the employer's attempt to shift the cost of doing business to an employee. Likewise, the employer may not use the forfeiture of commissions earned to punish employees who leave its employ.

46.   All the California MLO were subject to this commission forfeiture provision uniformly.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

47.     The California Labor Code § 203 (Unlawful Forfeiture) Class consists of more than 100 employees, and is so numerous that the joiner of each member of the class is impracticable.

48.     There is a well-defined community of interest in the questions of law and fact affecting the members of the California Labor Code § 203 (Unlawful Forfeiture) Class that Plaintiff seeks to represent.  The class members' claims against Defendant Bank of America involve questions of common or general interest, in that their claims are based on Defendant Bank of America's implementation and utilization of a policy pursuant to which all members of the class were subject. The common question is whether or not Defendant Bank of America's practice of penalizing employees for leaving its employ by forfeiture of earned by unpaid commissions lawful or not according to the California Labor Code.

49.     Plaintiff will fairly and adequately represent the interests of the members of the California Unlawful Forfeiture Class. Plaintiff is a member of the class, the claims of Plaintiff are typical of those in the class and there is no antagonism between the class and Plaintiff or his counsel.  Plaintiff's counsel is also experienced in these types of wage-hour actions.

50.     Plaintiff requests permission to amend the complaint to include additional class representatives if Plaintiff is deemed not to be adequate representative of the class.

**D.     California Labor Code § 204 (Improper Pay Period) Class Allegations**

51.     The **California Labor Code § 204 (Improper Pay Period) Class** consists of the following persons:

> **All employees of Defendant, Bank of America, who at all relevant times were employees of Defendant, Bank of America, as Mortgage Loan Officers who were subject to Defendant, Bank of America's illegal practices of not paying Plaintiff and all others similarly situated for work performed within the proper pay period in violation of California Labor Code § 204.**

52.     Specifically, Plaintiff and all others similarly situated did not receive commissions earned within a pay period until several pay periods after they were earned.

- 12 -
COMPLAINT

53.     The California Labor Code § 204 (improper pay period) class consists of at least 100 employees, and likely more, which is so numerous that the joiner of each member of the class is impracticable.

54.     There is a well-defined community of interest in the questions of law and fact affecting the members of the California Labor Code § 204 (improper pay period) class that Plaintiff seeks to represent.  The class members' claims against Defendant, Bank of America, involve questions of common or general interest, in that their claims are based on Defendant, Bank of America's implementation and utilization of a policy pursuant to which all members of the class were subject to Defendant, Bank of America's illegal practices of not paying Plaintiff and all others similarly situated for work performed within the proper pay period, in violation of California Labor Code § 204.

55.     Plaintiff will fairly and adequately represent the interests of the members of the California Labor Code § 204 (improper pay period) Class.  Plaintiff is a member of the class, the claims of Plaintiff are typical of those in the class and there is no antagonism between the class and Plaintiff or his counsel.  Plaintiff's counsel is also experienced in these types of wage-hour actions.

56.     Plaintiff requests permission to amend the complaint to include additional class representatives if Plaintiff is deemed not to be an adequate representative of the class.

**E.     California Labor Code § 1197.1 (Minimum Wage) Class Allegations**

57.     The **California Labor Code § 1197.1 (Minimum Wage) Class** consists of the following persons:

> **All employees of Defendant, Bank of America, who at all**
> **relevant times were employees of Defendant, Bank of America,**
> **who were subject to Defendant, Bank of America's illegal**
> **practices of requiring Plaintiff and all others similarly situated**
> **to work without payment of the minimum wage for all hours**
> **worked in violation of California Labor Code § 1194.**

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com; www.thermanbuck.com

58.     Specifically, Defendant paid commissions only for sales activities. But Plaintiff and putative members of the California Labor Code 1197.1 (Minimum Wage) Class worked for Defendant, Bank of America, as Mortgage Loan Officers were also required to attend training sessions, conferences, testing and other events without any compensation for these hours worked.

59.     The California Labor Code § 1194 (Minimum Wage) Class consists of at least 100 employees, and likely more, which is so numerous that the joiner of each member of the class is impracticable.

60.     There is a well-defined community of interest in the questions of law and fact affecting the members of the California Labor Code § 1194 (Minimum Wage) Class that Plaintiff seeks to represent.  The class members' claims against Defendant, Bank of America, involve questions of common or general interest, in that their claims are based on Defendant, Bank of America's implementation and utilization of a policy pursuant to which all members of the class were subject to Defendant, Bank of America's illegal practices of not paying Plaintiff and all others similarly situated the statutory minimum wage for all hours worked, in violation of California Labor Code § 1194.

61.     Plaintiff will fairly and adequately represent the interests of the members of the California Labor Code 1194 (Minimum Wage) Class because the Plaintiff is a member of the class and the claims of Plaintiff are typical of those in the class.  Plaintiff's counsel is also experienced in these types of wage-hour actions.

62.     Plaintiff requests permission to amend the complaint to include additional class representatives if Plaintiff is deemed not to be an adequate representative of the class.

**F.     California Labor Code § 226.7 (Rest Break) Class Allegations**

63.     The **California Labor Code § 226.7 (Rest Break) Class** consists of the following persons:

> **All employees of Defendant, Bank of America, who at all**
> **relevant times were employees of Defendant, Bank of America,**
> **who were subject to Defendant, Bank of America's illegal pay**

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com; www.thermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

**practices that did not compensate Plaintiff and all others similarly situated for their rest breaks in violation of California Labor Code § 226.7.**

64.     Defendant's pay scheme violates state and federal wage and hour laws by willfully avoiding Defendant's obligation to pay Plaintiff and members of the California Labor Code § 226.7 (Rest Break) Class their legally mandated wages. Rabobank's pay scheme also deprives Intervenors and all other similarly situated employees payment for rest periods, which is a direct violation of California's wage-hour laws recognized in *Vaquero v. Stoneledge Furniture LLC*, 9 Cal. App. 5th 98, 214 Cal. Rptr. 3d 661 (Ct. App. 2017), as modified (Mar. 20, 2017), review denied (June 21, 2017).

65.     The California Labor Code § 226.7 (Rest Break) Class consists of at least 100 employees, and likely more, which is so numerous that the joiner of each member of the class is impracticable.

66.     There is a well-defined community of interest in the questions of law and fact affecting the members of the California Labor Code § 226.7 (Rest Break) Class that Plaintiff seeks to represent.  The class members' claims against Defendant, Bank of America, involve questions of common or general interest, in that their claims are based on Defendant, Bank of America's implementation and utilization of a policy pursuant to which all members of the class were subject to Defendant, Bank of America's illegal practices of not paying Plaintiff and all others similarly situated wages for their rest breaks, in violation of California Labor Code § 226.7.

67.     Plaintiff will fairly and adequately represent the interests of the members of the California Labor Code § 226.7 (Rest Break) Class because the Plaintiff is a member of the class and the claims of Plaintiff are typical of those in the class.  Plaintiff's counsel is also experienced in these types of wage-hour actions.

68.     Plaintiff requests permission to amend the complaint to include additional class representatives if Plaintiff is deemed not to be an adequate representative of the class.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

## FIRST CAUSE OF ACTION

### Failure to Pay Overtime Premiums Under The FLSA

### (On Behalf of Plaintiff and the FLSA Class)

69.     Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

70.     29 U.S.C. Section 207(a)(1) provides as follows:  "Except as otherwise provided in the section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

71.     Upon information and belief, MLO's worked, and were expected to work 50 to 60 hours or more per workweek.

72.     Like most MLO's, Plaintiff worked in excess of 40 hours a week in almost every week he was employed from August 2015 until January 2017, except weeks when he was on vacation.

73.     Like all other MLO's, Plaintiff worked more than 40 hours in a workweek without receiving one and one half times his regular rate of pay for all hours worked in excess of 40 in that workweek.

74.     By failing to compensate Plaintiff and FLSA Class Members overtime pay for overtime hours worked, Defendant has violated the FLSA.  Defendant's violation was a systematic and willful act designed to deprive Plaintiff and FLSA Class Members of overtime pay for overtime hours worked.

75.     The relevant time period is three years from the date of the filing of consent to join until final judgment herein.

76.     Wherefore, Plaintiff demands for himself and for all others similarly situated, that Defendant pay Plaintiff and FLSA Class Members one and one-half times their regular

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

hourly rate of pay for all hours worked in excess of forty (40) hours a week during the relevant time period together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

<u>**SECOND CAUSE OF ACTION**</u>

**B&P Code 17200 for All California MLO's Not Paid Overtime Premiums Due for Work in Excess of 40 Hours A Week**

**(On Behalf of Plaintiff and the California Overtime / B&P Code 17200 Class Against Defendants)**

77.     Plaintiff hereby incorporates each and every allegation contained above, and realleges said allegations as if fully set forth herein.

78.     Failure to pay wages due is a claim under California Business and Professions Code Section 17200 even if those wages are due solely because of the FLSA. "[A] UCL claim could be predicated on an alleged FLSA violation." *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1116 (S.D. Cal. 2006); *Bahramipour v. Citigroup Global* Markets, Inc., 2006 WL 449132 (N.D.Cal. Feb.22, 2006) and *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1477 (C.D.Cal.1996).

79.     By failing to pay Plaintiff and its California MLOs overtime premiums due under the FLSA for work in excess of 40 hours per week, the Defendant has violated California Business & Professions Code Section 17200.

80.     The relevant time period is four years from the filing of this lawsuit to the date of final judgment herein.

81.     Wherefore, Plaintiff demands for himself and for all others similarly situated, that Defendant pay as restitution to Plaintiff and all members of the California Overtime / B&P Code 17200 Class one and one-half times their regular hourly rate of pay for all hours worked in excess of forty (40) hours a week during the relevant time period together with attorneys' fees, costs, interest, and penalties as provided by law.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

**THIRD CAUSE OF ACTION:**

**Illegal Forfeiture of Wages Earned in California**

**(On Behalf of Plaintiff and the California Labor Code § 203 (Unlawful Forfeiture) Class Against Defendants)**

82.    Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

83.    Like all MLO's employed in California, Plaintiff's were not paid commissions earned at the time of termination.

84.    Defendants policy was that Plaintiff and all other MLOs "must be employed on the date that any monies stated in th[e offer] letter are paid excluding monthly commissions and draws which are paid according to the Home Loans and Insurance General Plan Provisions."

85.    As a result, Plaintiff, like all MLO's employed in California, forfeited commission overrides like the Guarantee Plus and Enhanced BPS for which at the time of termination there was no more work required to be done by the Plaintiff.

86.    California Labor Code § 203(a) states in relevant part: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

87.    Plaintiff concedes that the employer may set off commissions advanced but not earned from future payments, but the essence of an advance is that at the time of payment the employer cannot determine whether the commission will eventually be earned because a condition to the employee's right to the commission has yet to occur or its occurrence as yet is otherwise unascertainable.

88.    A commission is not earned simply because at the time of termination, it is not ascertainable especially if the commission will become ascertainable in the future without further work necessary on the part of the employee."  Compare, *Ellis v. McKinnon Broad. Co*., 18 Cal. App. 4th 1796, 1805, 23 Cal. Rptr. 2d 80, 84 (1993)(no more work required) with *Am.*

*Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 54 Cal. Rptr. 2d 477 (1996) (company has to hire and pay substitute employee to attend to client after "sale".)

89.     In this case, the "sale" was complete and no more work was required to be done once the mortgage loan was funded and escrow closed.  Defendant paid commissions only, with a draw against commissions but no true base salary.  The purpose of the commission was to motivate employees to make sales, which earned commissions, and therefore Defendant received the benefit of its bargain at the time the mortgage was funded and escrow closed. *Free Range Content, Inc. v. Google Inc*., No. 14-CV-02329-BLF, 2016 WL 2902332, at *1 (N.D. Cal. May 13, 2016).

90.     Plaintiff does not claim commissions for any mortgage that was funded and closed after termination of employment. *Johnisee v. Kimberlite Corp*., No. A099761, 2003 WL 22810468, at *13 (Cal. Ct. App. Nov. 26, 2003).  Plaintiff seeks only those commissions that were earned at the applicable rate and for which all conditions were met, except the requirement that the employee be on payroll at the time the commission check issues.

91.     Defendant may not require an employee to agree to a wage deduction in the guise of recouping an advance based on conditions that are unrelated to the sale and/or that merely reflect the employer's attempt to shift the cost of doing business to an employee. Likewise, the employer may not use the forfeiture of commissions earned to punish employees who leave its employ.

92.     Defendant willfully failed to pay MLOs commissions and commission overrides at the time they were earned and could be calculated

93.     Plaintiff and all California Labor Code § 203 (Unlawful Forfeiture) Class members seek restitution for all hours worked and all overtime compensation owed and repayment of all sums MLO's forfeited unlawfully to Defendant and 30 days of wages for each class member as a penalty, plus interest, attorneys' fees, costs, and penalties, within three years of the filing of this lawsuit until final judgment herein.

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

**FOURTH CAUSE OF ACTION**

**California Labor Code § 204 Improper Pay Period**

**(On Behalf of Plaintiff and the California Labor Code § 204 (Improper Pay Period) Class**

**Against Defendants)**

94.        Plaintiff hereby incorporates each and every allegation contained above, and realleges said allegations as if fully set forth herein.

95.        California Labor Code § 204 states:

> All wages, other than those mentioned in Section 201, 202, 204.1, or 204. 2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays.  Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.  However, salaries of executive, administrative, and professional employees of employers covered by the Fair Labor Standards Act, as set forth pursuant to Section 13(a)(1) of the Fair Labor Standards Act, as amended through March 1, 1969, in Part 541 of Title 29 of the Code of Federal Regulations, as that part now reads or may be amended to read at any time hereafter, may be paid once a month on or before the 26th day of the month during which the labor was performed if the entire month's salaries, including the unearned portion between the date of payment and the last day of the month, are paid at that time.
>
> Notwithstanding any other provision of this section, all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.
> . . .
> However, when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees.
>
> The requirements of this section shall be deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven calendar days following the close of the payroll period.

96.     California Labor Code 200 states that "'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

97.     Commissions are considered "wages."

98.     MLO earn their commissions when the loan closes and is funded.

99.     Defendant pays MLO's their commissions several months after the loans upon which those commissions are based have closed and are funded.

100.    By paying their employees commissions earned several pay periods after the commissions were actually earned, Defendant, Bank of America, has violated the California Labor Code § 204.

101.    Plaintiff and the putative members of California Labor Code § 204 (improper pay period) class seek for each initial violation, one hundred dollars ($100) for each employee and for each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld pursuant to California Labor Code Sections 210 and 2699 within one year of the filing of this complaint until final judgment herein.

## FIFTH CAUSE OF ACTION

### California Labor Code 1197.1

### (On Behalf of Plaintiff and the California Labor Code § 1197.1 (Minimum Wage) Class Against Defendants)

102.    Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

103.    Defendant issues a pay check to MLO's twice a month.  However, the first paycheck issued is a "draw" against the commissions earned and paid in a subsequent pay check.

104.    California Labor Code § 1194(a) states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com; www.thermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

recover in a civil action the unpaid balance of the full amount of
this minimum wage or overtime compensation, including interest
thereon, reasonable attorney's fees, and costs of suit.

105.    A draw is a loan and is not paid free and clear.

106.    The second paycheck of commissions cannot be attributable to the first pay periods commissions under *Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 328 P.3d 1028 (2014) (holding that an employer may not attribute commission wages paid in one pay period to other pay periods.).

107.    Defendant intentionally requires that all California MLO's work for nothing during the first half of the month, which is less than the minimum wage in California.

108.    California Labor Code § 1197.1(a) provides:

Any employer ... who pays or causes to be paid to any employee a
wage less than the minimum fixed by an order of the [labor]
commission shall be subject to a civil penalty as follows: (1) For
any initial violation that is intentionally committed, one hundred
dollars ($100) for each underpaid employee for each pay period for
which the employee is underpaid. (2) For each subsequent
violation for the same specific offense, two hundred fifty dollars
($250) for each underpaid employee for each pay period for which
the employee is underpaid regardless of whether the initial
violation is intentionally committed.

109.    Plaintiff and the putative members of the California Labor Code 1197.1 (Minimum Wage) Class seek their minimum wages owed for all hours worked, liquidated damages, and for each violation intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid and for each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed, plus the minimum wage "free and clear" under California law, together with interest, attorneys fees, costs and penalties, for three years from the filing of this complaint until file judgement herein.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

## SIXTH CAUSE OF ACTION

### California Labor Code § 226.7

### (On Behalf of Plaintiff and the California Labor Code § 226.7 (Rest Period) Class Against Defendants)

110.    Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

111.    Section 226.7 provides: "An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or ... order of the [IWC]." (§ 226.7, subd. (b).) "If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an ... order of the [IWC], ... the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." (§ 226.7, subd. (c).)

112.    Wage Order No. 7 applies "to all persons employed in the mercantile industry whether paid on a time, piece rate, commission, or other basis." (Cal. Code Regs. tit. 8, § 11070, subd. 1.). Wage Order No. 7 provides: "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. *Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.*" (Cal. Code Regs. tit. 8, § 11070, subd. 12(A), italics added.) Like section 226.7, subdivision (c), Wage Order No. 7 further requires an employer who fails to provide an employee a rest period in accordance with the wage order's provisions to pay the employee one hour of pay at the employee's regular rate of compensation for each work day the employer did not provide the employee with the rest period. (*Id.*, § 11070, subd. 12(B).)

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

113.    The plain language of Wage Order No. 7 requires employers to count "rest period time" as "hours worked *for which there shall be no deduction from wages*." (Cal. Code Regs. tit. 8, § 11070, subd. 12(A), italics added.)

114.    Defendants pay scheme did not compensate for rest periods taken by Plaintiff and other California Rest Period Class members.  As stated above, the minimum and overtime wages paid to Plaintiff and other California Rest Period Class were not wages at all, they were merely draws against future commissions.

115.    The appellate court in *Vaquero v. Stoneledge Furniture LLC*, 9 Cal. App. 5th 98, 115, 214 Cal. Rptr. 3d 661, 674 (Ct. App. 2017), as modified (Mar. 20, 2017), review denied (June 21, 2017) held that this type of pay scheme does not properly compensate employees for their rest periods.  In *Stoneledge*, the court stated,

> The advances or draws against future commissions were not compensation for rest periods because they were not compensation at all.  At best they were interest-free loans. Stoneledge cites no authority for the proposition that a loan for time spent resting is compensation for a rest period. To the contrary, taking back money paid to the employee effectively reduces either rest period compensation or the contractual commission rate, both of which violate California law. (See § 221 [prohibiting employers from collecting or receiving from an employee "any part of wages theretofore paid by said employer"]; § 222 [prohibiting employers from withholding any part of a wage agreed upon]; § 223 [prohibiting employers from "secretly pay[ing] a lower wage while purporting to pay the wage designated by statute or by contract"]; cf. *Armenta*, *supra*, 135 Cal.App.4th at p. 323, 37 Cal.Rptr.3d 460 [averaging wages across pay periods to satisfy minimum wage requirements "effectively reduces [employees'] contractual hourly rate"].)

116.    This case is no different than the *Stoneledge*.  Accordingly, Plaintiff and other California Rest Period Class members are entitled to recover, and hereby demand, (1) their wages for each unpaid rest period for each and every shift worked and (2) a penalty for each and every unpaid rest period pursuant to Labor Code 226.7, in addition to attorneys' fees, costs, and interest.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

**SIXTH CAUSE OF ACTION:**

**Unfair Competition- Business & Professions Code, Section 17200, et seq**

**(On Behalf of Plaintiff and All Classes Against Defendants)**

117.     Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

118.     California Labor Code Section 226(a) requires an employer to:

> . . .furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment.

119.     As a result of the acts alleged above, Defendant has violated subsections 2 (all hours worked), 4 (deductions for forfeited commissions), and 9 (overtime and regular hourly rates)

120.     The employee is deemed to have suffered injury by the conduct of the Defendant, and members of the class have so suffered such injury in fact and as a matter of law.

121.     California Labor Code 226.3 states that

> Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction

1  statement or fails to keep the records required in subdivision (a) of Section
2  226. The civil penalties provided for in this section are in addition to any
   other penalty provided by law. In enforcing this section, the Labor
3  Commissioner shall take into consideration whether the violation was
   inadvertent, and in his or her discretion, may decide not to penalize an
4  employer for a first violation when that violation was due to a clerical
   error or inadvertent mistake.

5  122.    California Labor Code 226(e) (1) states:

6
7          An employee suffering injury as a result of a knowing and intentional
           failure by an employer to comply with subdivision (a) is entitled to
8          recover the greater of all actual damages or fifty dollars ($50) for the
           initial pay period in which a violation occurs and one hundred dollars
9          ($100) per employee for each violation in a subsequent pay period, not
           to exceed an aggregate penalty of four thousand dollars ($4,000), and
10         is entitled to an award of costs and reasonable attorney's fees.

11 123.    Wherefore, Plaintiff demands the greater of all actual damages or fifty dollars

12 ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per

13 employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of

14 four thousand dollars ($4,000), plus costs and reasonable attorney's fees pursuant to Labor

15 Code 226(e)(1).

16 124.    In addition, Plaintiff demands two hundred fifty dollars ($250) per employee per

17 violation in an initial citation and one thousand dollars ($1,000) per employee for each violation

18 of Labor Code 226(a) as a penalty due under the Private Attorney General Act, as more fully

19 stated below.

20

21                      **SEVENTH CAUSE OF ACTION:**

22         **Unfair Competition- Business & Professions Code, Section 17200, et seq**

23              **(On Behalf of Plaintiff and All Classes Against Defendants)**

24 125.    Plaintiff realleges and incorporates by reference all the paragraphs above in the

25 Complaint as though fully set forth herein

26 126.    California Business & Professions Code, Section 17200, entitled definition,

27 provides:

28              As used in this Chapter, unfair competition shall mean and
                include any unlawful unfair or fraudulent business act or practice

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

127.     Defendant 's conduct described herein above, constitutes an unfair and unlawful business practice in violation of provisions of California Business and Professions Code, Section 17200.

128.     As to all MLO's employed within California within four years of the filing of this complain, Defendant has violated provisions of the Labor Code as stated above.

129.     Plaintiff demands that Defendant make full restitution for all hours worked and all overtime compensation owed and for all sums MLO's forfeited unlawfully to Defendant within four years of the filing of this complaint until final judgment herein.

130.     Plaintiff seeks reasonable attorney's fees and costs pursuant to Code of Civil Procedure, Section 1021.5.

## SEVENTH CAUSE OF ACTION:

### California Labor Code Private Attorneys General Act of 2004

### (On Behalf of Plaintiff and All Aggrieved Employees Against Defendant)

131.     Plaintiff hereby incorporates each and every allegation contained above, and realleges said allegations as if fully set forth herein.

132.     California Labor Code § 2699(a), also known as the California Labor Code Private Attorneys General Act of 2004, states:

> Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3.

133.     Plaintiff is an "aggrieved employee" as that term is defined in the California Labor Code Private Attorneys General Act of 2004 because he is a person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.

134. Plaintiff has met all of the notice requirements set forth in California Labor Code § 2699.3 necessary to commence a civil action.

135. Plaintiff therefore brings this action on behalf of himself and all current and former MLO's employed by Defendant within the State of California.

136. Based on the facts and circumstances of this particular case, including but not limited to the gross revenues, the net worth, the economic benefit derived from doing business in the State of California, as well as the history of labor law violations and/or employee complaints against this employer, an award of the maximum civil penalty amount specified by California Labor Code § 2699 would not result in an award that is unjust, arbitrary and oppressive, or confiscatory, but is simply the presumed penalty specified by the legislature for violations of this type.

137. Therefore, Plaintiff, for himself and all MLO's employed within the State of California within one year of the filing of this complaint, demands the full amount of penalties provided by law for violations of California Labor Code as required by California Labor Code § 2699 within one year of the filing of this complaint until final judgement herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as hereinafter set forth:

1. For an order requiring Defendant to pay Plaintiff and FLSA Class Members who elect to become part of this litigation, one and one-half times their regular hourly rate of pay for all hours worked in excess of forty (40) hours a week during the relevant time period together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

2. For an order requiring Defendant to pay as restitution to Plaintiff and all members of the California Overtime / B&P Code 17200 Class one and one-half times their regular hourly rate of pay for all hours worked in excess of forty (40) hours a week during the relevant time period together with attorneys' fees, costs, and interest as provided by law.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

3. For an order directing Defendant to make full restitution for all hours worked and all overtime compensation owed and repayment of all sums MLO's forfeited unlawfully to Defendant and for an order requiring Defendant to pay Plaintiff and each members of the California Labor Code 203 (Unlawful Forfeiture) Class 30 days of wages for each class member as a penalty.

4. For an order requiring Defendant to pay Plaintiff and all members of California Labor Code § 204 (improper pay period) Class, one hundred dollars ($100) for each employee for the initial violation and two hundred dollars ($2000 to each class member for each subsequent violation, plus 25 percent of the amount unlawfully withheld pursuant to California Labor Code Sections 210 and 2699.

5. For an order requiring Defendant to pay Plaintiff and each member of the California Labor Code § 1197.1 (Minimum Wage) Class, payment of the minimum wages for all hours worked, liquidated damages, and one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid initially and for each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed, plus the minimum wage "free and clear" under California law.

6. For an order requiring Defendant to pay Plaintiff and each class member of the California Labor Code § 226.7 (Rest Period) Class damages in the amount of all unpaid wages for each and every rest period for each and every shift worked and penalties to which Plaintiff and each class member of the class member of the California Labor Code § 226.7 (Rest Period) Class are entitled pursuant to Labor Code § 226.7.

7. For an order that Defendant pay the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to

exceed an aggregate penalty of four thousand dollars ($4,000), plus costs and reasonable attorney's fees.

8.   For an order that Defendant pay the full amount of penalties provided by law for violations of California Labor Code as required by California Labor Code § 2699, to be distributed and apportioned as required by law between the State of California and all MLOs employed within California within a year of the filing of this complaint.

9.   For an injunction against Defendant enjoining them from all future violations of the California Labor Code;

10.  For all penalties recoverable by law;

11.  For all interest on any sums awarded as allowed by law;

12.  For all reasonable attorneys fees provided for by any applicable statute;

13.  For all costs of this suit allowed by law;

14.  For any other and further relief that the court deems just and proper.

DATED: August 17, 2017                    THIERMAN BUCK LLP


                                          /s/Mark R. Thierman
                                          Mark R. Thierman
                                          Joshua D. Buck
                                          Leah L. Jones

                                          *Attorneys for Plaintiff*

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com